LOUISVILLE, NEW ORLEANS AND TEXAS R. R. Co. *v.* W. A. DICKSON ET AL.

LOUISVILLE, NEW ORLEANS AND TEXAS R. R. Co. *v.* JULIA A. SMILEY ET AL.

NEW ORLEANS, BATON ROUGE, VICKSBURG AND MEMPHIS R. R. Co. *v.* A. E. DICKSON ET AL.

1. RAILROAD. *Right of way. Proceedings to condemn. Appointment of commissioners. Act of* 1882. *Session laws of* 1882, *page* 920, *construed.*

Under an act of incorporation of a railroad company, which provides that the appointment of commissioners to assess damages in favor of parties over whose land a right of way is sought to be condemned shall be made by the Chancellor, and in vacation by the chancery clerk, it is the duty of the Chancellor on proper application to appoint such commissioners at once, whose duty it is to proceed immediately to assess the damages. The statute does not contemplate the delay of a chancery suit with all of its incidents as the means of initiating the contest between the parties as to the "due compensation" to the owner.

2. SAME. *Right of way. Measure of damages. Railroad company distinguished from ordinary trespasser.*

Where a railroad company, without having acquired a right of way, enters upon land, and constructs its road thereon, and afterward proceeds to have the right of way over such land condemned, the landowner is not entitled to have the value of the improvements constituting the railroad placed on his land included in the amount of damages awarded in such proceeding. For such railroad company, though a trespasser, still has the right under its charter to acquire a right of way by condemnation, unaffected by its liability for the trespass. The rule of the common law as to a trespasser who affixes chattels to the freehold does not apply to a railroad company, whose liability is limited to damages for the trespass and "due compensation," recoverable in the proceeding appropriate to each.

APPEALS from the Chancery Courts of Wilkinson and Amite Counties.

HON. LAUCH MCLAURIN, Chancellor.

The appellant in the three several cases here considered together entered on the land of the respective appellees, and proceeded to construct its railroad thereon without having acquired any right

of way therefor. While thus constructing its road, the railroad company, in the respective cases, presented a petition to the chancery court to have condemned the right of way over the land, in accordance with the provisions of its charter. The petition prayed that commissioners be appointed by the court to assess the damages appellees may have sustained. The Chancellor appointed the commissioners, and, on the application of appellees, instructed them to include in the assessment of the damages " the value of the iron, road-bed, and bridges at their value in the market generally, but not as a railroad or constituting any part of it." These appeals were taken from this decretal order.

*Percy, Yerger & Percy,* for the appellants.

1. By reference to the special statute, it will be seen that the Chancellor's rights and duties are plainly prescribed. He is to appoint the commissioners, not instruct them, and is to do so forthwith. Had a justice of the peace or a circuit clerk been named as the person to make the appointment, it would never be contended that before doing so he was to entertain a long contention or litigation and hear evidence as to what was to be the measure of damages and then instruct the commissioners as to their duty. Under the amendment to this charter it will not be contended that when the petition is filed before the clerk in vacation, any similar proceeding could be entertained by him. It is not a subject of equity jurisdiction. In fact, throughout the proceedings, and up to the time of an appeal before a jury in his court, the Chancellor's duties and powers are purely ministerial, except that he can prescribe the notice to be given and appoint guardian for minors. His duty was to appoint three commissioners forthwith upon the filing of the petition, and to make his precept to them run as nearly as possible in the language of the statute. 58 Miss. 803. His power in the premises is derived solely from the statute, and in no sense appertains to his general equity jurisdiction. The purpose of all statutes upon this subject is to settle, as summarily and speedily as possible, by a proceeding *in pais* the amount to be paid or tendered the owner. If errors of law or as to facts are committed by the special tribunal, the aggrieved party can appeal and have them

corrected by the courts of the country.    In the meantime the cor-
poration can pay or tender the award and go on with its work.    In
the very nature of things this is absolutely necessary to public im-
provements.

2. The court below instructs the commissioners in its interlocutory
decree that they must estimate, as part of the compensation to be
paid the landowner, the value of the superstructure placed on the
land by the company.

If the company put down that superstructure under permission
or license or color of title believed to be good, then, even though
the license be revoked or the title void in proceedings of this
nature, it could not be forced to pay therefor.    *Devay* v. *Missis-
sippi and Tennessee R. R. Co.*, 42 Miss. 555 ; Mills on Em. Dom.,.
§ 148 ; Pierce on Railroads 219 ; Rorer on Railroads 389–90,.
and note 1 ; 60 Miss. 689 ; *Jones* v. *N. O. and S. R. R. Co.*, 70
Ala. Rep. 227 ; *Justice* v. *N. V. R. R. Co.*, 87 Penn. 28 ; *Mary·
Greve* v. *St. P. and Pac. R. R. Co.*, 26 Minn. Rep. 66 ; 47 Mich.
456 ; 39 Mich. 675 ; 42 Wisconsin 538 ; 46 California 90 ; 45·
Georgia 180 ; 60 Texas 215.

3. The decree is erroneous, because the superstructure of a rail--
road company, even though said company may have entered with-
out right or color of title, and as a trespasser pure and simple,.
should not be estimated or treated as the property of the land-
owner and compensation awarded him therefor, in a proceeding·
instituted by the company, whilst in possession and after construc--
tion, for the purpose of making its possession valid.

The rule prescribed by the constitution is that the citizen shall
receive " due compensation " when his property is taken by the·
State or by her authority for a public use.    He is entitled to the·
full measure of " due compensation."    When he receives more than
this, the spirit and the letter of the constitution are violated,.
Statutes prescribing the methods in which the right of eminent
domain shall be exercised are simply for the purpose of ascertain-
ing and awarding this " due compensation."    To hold that when a
railroad is laid down on land, even though without title or in
willful invasion of the landowner's rights, that it thereby becomes,

his property, and that in condemnation proceedings the company must pay him for it, outrages the moral sense, and is in utter disregard of the purpose of the constitution. That purpose is to make him whole—fully, entirely whole—for the deprivation of *his* property. It is not the intent to enrich him by giving him tenfold more than the value of what was really taken from him, although that taking may have been in itself a trespass. This would be, manifestly, to give him undue and exorbitant compensation. The question of punishment for a willful trespass can have no place in this discussion. The railroad must pay for its own superstructure in any case where it is technically a trespasser, whether by inadvertence, mistake as to ownership, or by reckless invasion of the landowner's rights, or it is not liable in this proceeding in any of these cases. The same reason would affix the liability on it in all of them, to wit: the rule that all things affixed to the freehold by a trespasser belong to the owner. It is because of the fact that under this rule the property became *his*, and the character of the trespass has nothing to do with it. The same reasoning, on the other hand, would relieve it of such liability, irrespective of the nature of the trespass.

*W. A. Percy*, for the appellants, argued the case orally.

*D. C. Bramlett*, for the appellees.

1. The principal question involved in the cases here presented is whether or not the value of the improvements shall be included in the valuation of the land and the estimation of damages to be awarded appellees. And to this the answer readily arises that such improvements belong to the owner of the land and should be included in the valuation, under the well-recognized maxim that whatever is affixed to the realty is made a part of it, and partakes of all its incidents and properties. Nor can the fact that the improvements and structures are for the public use vary this maxim, for our fundamental law is that "private property shall not be taken for public uses, except upon due compensation first being made to the owner." In support of the proposition that in these cases the value of the railroad affixed to the land must be given to the owner I refer this court to the cases of *Graham* v. *C. & N. C. Ry. Co.*, 36 Ind. 463; S. C., 10 Am. Rpts. 56.

But aside from principle, reason, and authority, all or the best of which is on our side, I insist that § 2513 of Code of 1880 settles the question.    This familiar section is that judgments in ejectment shall be conclusive to the right of possession—that is title—established thereby upon the party against whom it is recovered, and upon all persons claiming from them.    Our judgment in each case is for the land, including road-bed, ties, rails, bridges, etc.    See Case No. 5101, p. 21 ; No. 5102, p. 17, and Cases No. 1503, pp. 21 and 22.    See also Record Cases, No. 5101, p. 28, No. 5102, p. 33.    We have established title to and the right of possession of the railroad, and the value of it must be paid to us before it can become the property of appellants.    This seems to me too plain to admit of any question.    The ejectment suits determined that the road-bed, etc., are fixtures, and is *res adjudicata.*

Nor can it be said that the railroad is only an easement and does not become a part of the reality, for the rule is the same in the case of a trespass, let the purpose of the improvement be what it may.

2. The remaining question is as to the practice in such cases in the chancery court, and appellants deny that the court has any power or authority to instruct the commissioners in any manner in their duties.    Upon this point I say that there is an inherent power in our chancery courts to instruct its officers, agents, and creatures upon all questions of law in the discharge of duties intrusted to them.    What they shall do is a question of law ; how they are to reach certain conclusions a question of fact to be determined by them.    In these cases what they, the commissioners, were to value is a question properly determined by the court, how they were to ascertain the value of the land and structures a matter of fact to be reached from testimony adduced before them.

*D. C. Bramlett* also made an oral argument.

Campbell, J., delivered the opinion of the court.

The correct practice under the acts on the subject is to appoint the commissioners, when applied for, at once, and for them to perform the duties devolved on them.    The law does not contemplate

the delay of a chancery suit, with all its incidents, as the means of initiating the contest between the parties as to the " due compensation" to the owner.

The direction to the commissioners to include in their estimate of damages the value of the railroad upon the land is erroneous. On this subject we adopt the views held by the courts of Alabama, Michigan, Pennsylvania, Minnesota, and Wisconsin. *Jones* v. *Railroad Co.,* 70 Ala. 227 ; *Morgan's Appeal,* 39 Mich. 675 ; *Railway Co.* v. *Dunlap,* 47 Mich. 456 ; *Greve* v. *Railway Co.,* 26 Minn. 66 ; *Justice* v. *Railroad Co.,* 87 Pa. St. 28 ; *Lyon* v. *Railway Co.,* 42 Wis. 538. See also *Railroad Co.,* v. *Matthews,* 60 Texas 215.

The railroad company was a trespasser in constructing its road upon land over which it had not acquired the right of way, but it still had the right to acquire the right of way unaffected by the liability incurred for its trespass. The trespass committed is not involved in the determination of the due compensation. The continuing right of the company to secure the right of way, in accordance with its charter, and the nature of its entry on the land and annexing chattels to the soil distinguish the case from that of a trespasser who affixes chattels to the freehold, and the rule of the common law, established when railroads were unknown, is not applicable. Answerability by the company for its trespass in the appropriate action, and " due compensation " in the proceedings for condemnation of the right of way, constitute the full measure of the right of the landowner.

*Reversed and remanded, with directions for the appointment of commissioners, as prescribed by law.*