The Midland Railway Company v. Smith.

No. 16,250.

THE MIDLAND RAILWAY COMPANY v. SMITH.

INJUNCTION.—*Railroad.*—*Right of Way.*—*Failure to Pay Damages Assessed.*—*When Too Late to Enjoin from Use of Way.*—*Public Rights.*— Where a land-owner obtained an assessment of damages for a right of railway, and the land-owner permitted the road to be constructed and operated over the same, the damages assessed not having been paid, and public rights having attached to such railway, a suit, under such circumstances, to enjoin the railroad company from the use of the right of way, is not seasonably brought, and can not be sustained as against the superior rights of the public.

From the Hamilton Circuit Court.

*H. Crawford* and *W. R. Crawford*, for appellant.

*W. R. Fertig* and *H. J. Alexander*, for appellee.

HACKNEY, J.—The appellee sued the appellant to enjoin the use of a right of way through his lands.

The complaint alleged, that on May 19th, 1887, in proceedings by the appellee, he obtained an assessment of damages for such right of way in the sum of one thousand dollars; that on such assessment a decree of confirmation was rendered in his favor, conditioned that upon payment of said sum the title should vest in the appellant, but that until such payment no title should vest and no rights should be acquired; that appellant has failed and refused to pay the damages assessed, but, "by force and arms, took possession of said right of way against the protests of the plaintiff, and has been using it ever since in the operation of its said railroad."

Upon the hearing, the court found, that the appellant "is now, and has been for some years past, without the consent of the plaintiff, using for and as its right of way over and through plaintiff's farm," the way described in the complaint; that said assessment of damages was

The Midland Railway Company *v*. Smith.

made, and that said decree was entered and remains in full force, and that the assessed damages were never paid.

Over motions for a new trial and in arrest of judgment, the court entered a decree enjoining the appellant from the further use of the way so occupying appellee's lands.

The sufficiency of the evidence is discussed, but as it is not properly in the record we do not consider it.

The decree was entered May 23d, 1891, and twenty days were given to file a bill of exceptions; on the 8th day of June, 1891, a bill of exceptions was filed including the evidence only by the words "here insert the copy of the stenographer's transcript of testimony, given by plaintiff."

The transcript of the stenographer's copy of the evidence was not filed until July 27th, 1891, more than sixty days after the entry of the decree. It thus appears that the evidence not only did not get into the bill of exceptions, but that the judge who signed the bill had no opportunity to examine the evidence before giving his signature to the bill.

While stenographic reporting has attained a high degree of accuracy, and has become one of the almost indispensable aids to the thorough and expeditious trial of causes, it is not contemplated that the trial judges should give over to the reporter the final judgment and discretion as to the extent and the correctness of the evidence in a cause.

In permitting the reporter's transcript to become a part of the record on appeal, the Legislature had in view the economy of making one copy of the evidence answer the purposes both of the bill of exceptions and the record, and did not intend to relieve the trial judge of the duty of examining the evidence and giving it authenticity by his signature to the bill of exceptions.

The appellee objects to a consideration of the ruling upon the motion in arrest of judgment, for the reason that the motion is not in the record by bill of exceptions. This objection can not prevail. Where the motion relates to a matter not collateral, but apparent upon the face of the record, it is not necessary to present it by bill of exceptions. *Freshour* v. *Logansport, etc., Turnpike Co.*, 104 Ind. 463.

Is the complaint sufficient to sustain the judgment? This inquiry may find an answer in the application of principles which have become firmly settled in the law of this State.

While ejectment or injunction may be maintained to recover possession or prevent the use of lands for a right of way by a railroad company, if the possession and threatened use has been obtained without the consent of the land-owner, and without pursuing the methods of the law, as held in *Indiana, etc., R. W. Co.* v. *Allen*, 113 Ind. 581, and the cases there cited, it is no less firmly settled that delay in pursuing such remedies, until the company has put its line in operation, and the interests of the public have attached in the railway as a means of transportation, such remedies are lost. *Indiana, etc., R. W. Co.* v. *Allen, supra; Midland R. W. Co.* v. *Smith*, 113 Ind. 233; *Bravard* v. *Cincinnati, etc., R. R. Co.*, 115 Ind. 1; *Sherlock* v. *Louisville, etc., R. W. Co.*, 115 Ind. 22; *Louisville, etc., R. W. Co.* v. *Soltweddle*, 116 Ind. 257; *Louisville, etc., R. W. Co.* v. *Beck*, 119 Ind. 124; *Kincaid* v. *Indianapolis Natural Gas Co.*, 124 Ind. 577; *Porter* v. *Midland R. W. Co.*, 125 Ind. 476; *Strickler* v. *Midland R. W. Co.*, 125 Ind. 412; *Morgan* v. *Lake Shore, etc., R. W. Co.*, 130 Ind. 101.

Certainly the judgment awarding the appellee damages, as pleaded, did not affect these rules, for they proceed upon the theory that the possession and use of the way

may have been obtained wrongfully. The judgment did not make the entry and use more wrongful than would have been the violation of his right of ownership and possession existing before the judgment. If the company's occupancy had begun after the assessment and judgment, we need not decide whether it had better rights than if possession had been taken before. That question involves the right of the appellee to pursue his judgment by execution, and the further question, whether, in the pursuit of the statutory remedy for the assessment of damages, the appellee did not consent to the appropriation, or estop himself, while claiming the judgment to enjoin the use. These are questions belonging to the appellee's enforcement of whatever rights he obtained under his judgment, and are not necessary to the decision of the case before us. The complaint herein was filed on the 20th day of March, 1891, and alleged that then, and before that time, the appellant was in possession of the way, using it in the operation of its railroad. The allegation is indefinite as to the time when such use began, but our construction of it is that such possession followed the assessment next in the order of the occurrences alleged, and the time will be presumed to relate most nearly to that time. The finding of the court, it will be observed, supports this construction. Therefore, the appellant was permitted to construct its tracks, put on its equipment, and operate its road for a period of near four years before the appellee sought to enjoin. This conclusion is upon the presumption that the proceedings for the assessment were instituted and prosecuted to a conclusion before the road was fully constructed and put in operation. If we may presume that the assessment proceedings followed the possession and use of the way in operating the line of railway, the rights of the public would have vested that much earlier, and

the appellee's silence would have precluded him so much sooner.

As said in *Indiana, etc., R. W. Co.* v. *Allen, supra,* "acquiescence after public rights have intervened will prevent a land-owner from destroying the line of road by wresting possession of a part of it from the company. This principle does not rest upon the right of the railroad corporation so much as upon considerations of public policy. The rights of citizens are often abridged in order that the public welfare may be promoted."

The remedy sought in this suit is as destructive of public rights as ejectment. The end sought would sever the line, and materially affect public convenience. As further said in the case quoted from, "he may invoke the strong arm of the courts, but to do this he must move before public interests are involved." This principle was enforced in *Midland R. W. Co.* v. *Smith, supra,* a case which should be regarded as decisive of this case. Our conclusion is that the suit to enjoin was not seasonably brought, and that it can not be sustained to the destruction of the superior rights of the public.

The judgment of the lower court is reversed, with instructions to sustain the appellant's motion in arrest of judgment.

Filed Nov. 21, 1893.